[Crim. No. 334.   Second Appellate District.—September 14, 1914.]

# THE PEOPLE, Respondent, v. MIJO VUKOJEVICH, Appellant.

Appeal—Order Denying New Trial—Presumption as to Correct-
ness.—On an appeal in a homicide case from an order refusing a
new trial it will be presumed that the ruling was correct where
neither the grounds upon which the motion was based nor the affi-
davits of newly-discovered evidence are incorporated in the record.

Id.—Affirmative Showing of Error—Duty of Appellant to Make.—
It devolves upon an appellant to show the existence of error. In
the absence of such showing the appellate court, in accordance with
the rule that all intendments are in favor of the regularity of the
proceedings, will indulge the presumption that the ruling of the
trial court complained of was correct.

Id.—Conflict of Evidence—Province of Appellate Court.—Appellate
courts cannot and will not, where a substantial conflict of evi-
dence exists, determine the credit which should be accorded wit-
nesses, or attempt to weigh their testimony.

Homicide—Sufficiency of Evidence to Support Conviction.—In this
prosecution for murder the evidence is sufficient to support the ver-
dict of guilty, though no witness testified to actually seeing the
defendant inflict the fatal wound.

Id.—Dying Declaration—Sense of Impending Death.—In such prose-
cution a declaration of the deceased to the effect that the defendant
had killed him, made within one or two minutes before his death
from the wound inflicted upon him, is admissible in evidence as
having been made "under a sense of impending death."

Id.—Proof That Declaration Was Made Under Sense of Impend-
ing Death.—To constitute proof that a declaration was made un-
der sense of impending death, it is not necessary that the de-
ceased should have expressed in words the belief that he was about
to die; it is enough if it satisfactorily appears in any mode that
the declaration was made under that sanction.

Id.—Opinion or Conclusion—Whether Declaration Constitutes.—A
statement made by a wounded man immediately preceding dissolu-
tion, that the defendant killed him, is not the expression of an
opinion or conclusion.

Id.—Misconduct of Court Toward Witness—Whether Prejudicial.
For a trial judge in a homicide case to tell a witness to "shut up,"
and to use no "more profane language or you will get in jail," is
not reversible error.

Id.—Courtesy of Court Toward Witness—Review on Appeal.—The
degree of courtesy to be exercised by the trial court toward a wit-

ness is not a subject for judicial review, unless it clearly appears
that the defendant's rights were prejudiced thereby.

ID.—INSTRUCTIONS—REFUSAL TO GIVE—REVIEW ON APPEAL.—Alleged
error in refusing to give certain instructions to the jury cannot be
considered on appeal, in the absence of anything in the record show-
ing that the defendant requested the court to give any instructions.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial.
Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Frank A. McDonald, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy
Attorney-General, for Respondent.

SHAW, J.—Defendant and two others were charged with
the crime of murder. Upon a separate trial defendant was
convicted of the crime of manslaughter. He appeals from
the judgment and an order denying his motion for a new
trial.

A sufficient answer to the appeal from the order denying
the motion for a new trial is that the grounds upon which the
motion was based are not disclosed by the record; neither are
the affidavits of newly-discovered evidence referred to in
appellant's brief, incorporated therein. It devolves upon
appellant to show the existence of error. In the absence of
such affirmative showing this court, in accordance with the
rule that all intendments are in favor of the regularity of the
proceedings, will indulge the presumption that the ruling was
correct.

All of the parties involved were Slavonians. It appears that
on the afternoon of October 5, 1913, the attention of deceased,
whose name was Charles Rezo, and several companions, all of
whom were at the time in a house known as No. 114 Leroy
Street in Los Angeles, was attracted by the report of fire arms
at No. 118 on said street. Deceased left the house, followed
by several others, going toward the house No. 118, at which
time defendant, accompanied by several companions, all or
most of them being armed with knives and pistols, met the
party of deceased coming from No. 114, and a general fight,

accompanied by much neighborhood excitement, ensued. In the affray Charles Rezo was almost instantly killed by a knife wound which pierced the pulmonary artery. According to the theory of the prosecution, this knife wound which caused the death of Rezo was inflicted by defendant, and it is apparent from the verdict rendered that the jury were satisfied as to the correctness of such theory.

Counsel for defendant has filed a voluminous brief of nearly one hundred pages, wherein he attacks the sufficiency of the evidence to justify the verdict. In his zeal in this behalf he not only quotes at great length the evidence pro and con given by the numerous witnesses, pointing out discrepancies therein which he insists render certain testimony given for the prosecution unworthy of credence and without weight, but not content with so doing, produces what he claims to be the testimony of a witness given in another trial of one of the parties jointly charged with defendant, and by comparing it with the testimony of the same witness given in this case, attempts to show inconsistencies therein. If any question can be deemed settled law in this state it is that the appellate courts cannot and will not, where a substantial conflict of evidence exists, determine the credit which should be accorded witnesses, or attempt to weigh their testimony. It indeed appears useless to cite authorities in support of the proposition that under such circumstances no question of law is presented for review. In this case appellant, by pointing out the alleged discrepancies, concedes a substantial conflict in the evidence which, he says, renders it unsatisfactory. What is said in *People* v. *Haydon,* 18 Cal. App. 543, [123 Pac. 1102, 1114], is peculiarly appropriate in this case; "If, therefore, every case taken to the appellate courts were to be reversed because of discrepancies or contradictions in the testimony of witnesses without whose testimony a verdict of a jury or the findings of a court could not be sustained, there would, indeed, be few cases in which a reversal would not be compelled upon the ground of the insufficiency of the evidence to support such verdict or findings. . . . It is for this reason that our constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved. . . . In consonance with the spirit and intent of this constitutional provision, the legislature has

ordained that the jury are the exclusive judges of the credibil-
ity of witnesses (Code Civ. Proc., sec. 1847) and are the judges
of the effect and value of evidence addressed to them, except
in those instances where it is declared by the law that it shall
be conclusive proof of the fact to which it relates." While
the record fails to show that any witness actually saw defend-
ant inflict the fatal wound, it does show that defendant with
another had deceased down at which time defendant, with a
gun in one hand and a knife in the other, was on top of Rezo
striking him with the gun; that he was pulled off of Rezo,
when the latter got up, staggered against a fence and fell in
the arms of a friend to whom he stated that defendant had
killed him, his death following immediately after making the
statement. In addition to the testimony of two witnesses to
such fact, there was other evidence and circumstances which
clearly pointed to defendant's guilt. Indeed, it is difficult to
perceive how the jury could have reached a verdict other than
one pronouncing defendant guilty.

The chief question of law presented is the admission in evi-
dence of the declaration made by deceased to the effect that
defendant killed him. Witness Soldo, after testifying to
occurences immediately preceding the death of Rezo, stated
that the latter died one or two minutes after he (the witness)
asked him what was the matter with him. Thereupon he was
asked: "What did Rezo say to you?" Defendant's objection
that a proper foundation was not laid for eliciting the evi-
dence, in that it was not made to appear that Rezo knew he
was dying, was overruled and the witness stated that deceased,
while lying in his arms, replied that "Mike Vukojevich (the
defendant) and Grgo Vukojevich have killed me." Appel-
lant insists that it was not made to appear that the declara-
tion was made "under a sense of impending death," in the
absence of which showing the statement was inadmissible.
(Code Civ. Proc., sec. 1870, subd. 4.) To constitute proof of
such fact it was not necessary that deceased should have ex-
pressed in words the belief that he was about to die. Says
Mr. Greenleaf, in regard to the mode of establishing the
necessary fact: "It is enough, if it satisfactorily appears, in
any mode, that they (the statements) were made under that
sanction; whether it be directly proved by the express
language of the declarant, or be inferred from his evident
danger, . . . or from his conduct, or other circumstances of

the case, all of which are resorted to, in order to ascertain the state of the declarant's mind.'' (1 Greenleaf on Evidence, sec. 158.) The evidence of a physician called as a witness was that such a wound as that inflicted upon deceased must necessarily result in immediate death.. The testimony showed that death ensued from one to two minutes after the infliction of the wound. The evident danger of such a wound, followed by its immediate fatal effect upon the victim, was a strong circumstance tending to show that he knew his condition. (*People* v. *Ybarra,* 17 Cal. 169.) The statement made immediately preceding dissolution that defendant had killed him was not the expression of an opinion, nor a conclusion (*State* v. *Saunders,* 14 Or. 300, [12 Pac. 441] ; *State* v. *Gile,* 8 Wash. 12, [35 Pac. 417] ), but was equivalent to saying that defendant had inflicted the fatal knife wound which caused his death, and the use of the words ''has killed me'' justified the inference that deceased was cognizant of his dying condition. The evidence of Soldo in this respect was corroborated by the testimony of Mato Rezo. In our opinion, no error was committed by permitting the statement so made by deceased to be introduced in evidence as his dying declaration.

Appellant complains of alleged misconduct of the trial judge, which he insists was prejudicial to his case. This contention is based upon the following proceedings: One Ephifanos, called as a witness on behalf of the defense, testified that when the trouble started a number of men were playing pool in a billiard room which he conducted. In describing the manner in which these persons left their game, he exclaimed: ''My God, they flew out and ran and leave the cue, all six tables flew. I say, what is going on?''

''The Court: I don't want you to use that language again in this court. Don't use any profane language in this court.

''The Witness: Excuse me, I don't mean—they gone out—

''The Court: Shut up, just a minute now. That seems to be the only thing that you can understand. Go ahead and tell your story, but don't use any more profane language or you will get in jail.''

It is impossible to conceive how the rights of defendant could have been prejudiced by the court telling the witness to shut up, or threatening him with a jail sentence for the use of the language in which he indulged. The degree of courtesy to be exercised by the court toward a witness is not

a subject for judicial review, unless it clearly appears that defendant's rights were prejudiced thereby (*People* v. *Casselman,* 10 Cal. App. 234, [101 Pac. 693]); hence the language used toward the witness is no concern of defendant.

It is claimed the court erred in refusing to give certain instructions requested by defendant. There is an absence of anything in the record showing that defendant requested the court to give any instructions; hence there is no merit in the contention. (*People* v. *Hettick,* 126 Cal. 429, [58 Pac. 918].)

Counsel for appellant has made excerpts from the instructions given, which, thus isolated, he claims were erroneous statements of law. Instructions must be considered as a whole, each part thereof in connection with the other, and as applied to the subject matter thereof. Thus considered, the instructions given, covering upwards of twenty pages of the record, constitute a full, fair, and correct exposition of the law applicable to the facts established by the evidence. Our attention is directed to other alleged errors in rulings upon the admissibility of evidence offered. They are trivial in nature and, conceding such rulings to have been error, it is apparent that upon this record defendant could not have been prejudiced thereby.

We find no prejudicial error disclosed by the record, and the judgment and order denying defendant's motion for a new trial are affirmed.

Conrey, P. J., and James, J., concurred.