[Crim. No. 996. Second Appellate District, Division Two.—November 3, 1923.]

# THE PEOPLE, Respondent, v. E. W. BAKER, Appellant.

[1] Criminal Law — Embezzlement of Automobile — Conflicting Evidence—Verdict—Appeal.—In a prosecution for the embezzlement of an automobile, where the evidence given by the people's witnesses is flatly contradicted, on many points, by that given by the defendant and his witnesses, but the jury by their verdict of guilty resolve such contradictions in favor of the testimony of the people's witnesses, the appeal from the judgment of conviction must be disposed of upon the assumption that the facts are as testified to by them.

[2] Id.—Receipt of Automobile for Specific Purpose—Conversion to Own Use — Embezzlement. — The defendant having received the automobile under a contract to paint it and return it, with the optional right to buy it if he should desire to do so upon becoming financially able to make the initial payment, defendant held the car as a bailee only, and he was guilty of embezzlement when, instead of painting the car or purchasing it by making the agreed payment, he fraudulently and feloniously converted it to his own use.

[3] Id.—Limited Right to Use Automobile—Taking Out of State —Inferences—Intent.—Defendant having been given the right to drive the automobile to a given place within the county, for a specific purpose, and then only on a given day, his action in taking the car out of the state in the manner he did, with all the attendant circumstances, was sufficient to warrant the jury in drawing the inference that he converted the car to his own use in a manner and for a purpose inconsistent with the owner's rights and inconsistent with the nature of the purposes of the bailment, and that he did so with a fraudulent and felonious intent; and there was, therefore, no necessity for a demand that the property be returned.

[4] Id.—Venue—Evidence.—In this prosecution for the embezzlement of an automobile the evidence was sufficient to warrant the jury in finding that the intent to embezzle the property was conceived in the county in which the action was brought.

[5] Id.—Restoration of Automobile—Mitigation of Punishment— Defense.—Had defendant voluntarily restored or tendered restora-

---

5. Intent, or offer to return or actual return of property, as affecting charge of embezzlement, notes, Ann. Cas. 1916C, 67; 52 L. R. A. (N. S.) 1013.

tion of the embezzled automobile before the complaint was laid against him before the committing magistrate that fact might have justified the trial court in mitigating the punishment, but it would not be ground of defense; and his guilt was not affected by the fact that the evidence failed to show that the automobile was not recovered and returned to its owner prior to the time when the complaint was lodged with the committing magistrate.

[6] ID.—ADMISSIONS BEFORE COMMITTING MAGISTRATE—TESTIMONY OF REPORTER—REFRESHING RECOLLECTION.—The person who took the shorthand notes of the testimony which defendant gave before the committing magistrate, in which testimony defendant made certain admissions, was competent to testify to such admissions or statements at the trial in the superior court, regardless of whether she was or was not a duly appointed official reporter; and it was proper to permit her to refer to her notes for the purpose of refreshing her recollection.

[7] ID.—REFUSAL OF INSTRUCTIONS — APPEAL — RECORD.—The contention that the trial court erred in refusing to give certain instructions is not available on appeal where the record fails to show that the requests for the instructions were proffered by appellant.

[8] ID. — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — ABSENCE OF DILIGENCE—DISCRETION.—It is not an abuse of discretion to deny a motion for a new trial on the ground of newly discovered evidence where the motion is supported by the affidavits of the persons whose testimony defendant claims he can adduce if granted a new trial, but no attempt is made to show that their evidence could not have been produced at the trial by the exercise of reasonable diligence.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. W. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fred A. Shaeffer and W. E. Learned for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—By an information filed in the superior court of Santa Barbara County defendant was charged with the embezzlement of an automobile, the property of one O. P. Hazard. He was found guilty, and now appeals from the judgment of conviction and from the order denying his motion for a new trial.

The information charges that defendant, as a bailee, was intrusted by Hazard with a Nash automobile of the value of seven hundred dollars, and that on or about June 13, 1922, at Santa Maria, in the county of Santa Barbara, he feloniously and fraudulently, appropriated it to his own use.

Appellant's main contention is that the evidence is insufficient to justify the verdict. The evidence adduced by the People tended to prove the following: Defendant was the proprietor of a paint shop at Santa Maria. Hazard, the owner of the automobile, took his car to defendant's place of business on June 12, 1922, to have it painted. Defendant agreed to paint the car and to finish the job not later than June 21st. He signed and delivered to Hazard a receipt for the property reading as follows:

"Rec'd. of O. P. Hazard June 12, '22 Nash, a chummy roadster, 249341. To be painted dark blue Black fenders promised June 21st, '22.

"[Signed]   E. W. BAKER."

Hazard testified unequivocally that he delivered the automobile to defendant and left it with him under the latter's agreement to paint it, as evidenced by this written receipt. It seems that Hazard desired to sell the car to anyone who would purchase it on terms satisfactory to him; and such desire to sell seems to have furnished the reason why he wanted the automobile painted, he thinking, doubtless, that if it were painted it would sell more advantageously. Prior to delivering the automobile to defendant, i. e., a day or so prior to June 12th, defendant and Hazard had a conversation respecting the possible purchase of the car by the former. Hazard expressed a willingness to sell the automobile to defendant for six hundred dollars, payable one-half at the date of sale and the balance on time. Defendant was seemingly willing to buy the car for that sum, but instead of agreeing to make an immediate cash payment of one-half of the purchase price he offered to give for the initial payment his personal check, post-dated two weeks. Hazard declined to consider any such arrangement, but told defendant that the latter could buy the car for six hundred dollars if he would pay one-half down and the balance in monthly installments. On his cross-examination Hazard testified in part as follows: "Q. Did you agree upon a sale? A. No,

sir. I wouldn't receive his check dated two weeks ahead. . . . I agreed that I would sell it for that [six hundred dollars] if he had the money. . . . Q. Mr. Baker did not have the purchase price at that time? A. No. Q. It was settled at that time that Mr. Baker should use the car in order to secure the money to pay you for the car? A. I took the car to be painted. He asked me for the use of it to go out to Sisquoc [a small town in Santa Barbara County], as I understood him, to raise the money. Q. And you consented to have him use the car so he could go out and get the money? A. On that day [June 12th], yes, sir. . . . If I did not find another purchaser before he bought it he had the privilege to buy it. Q. He had the privilege of buying that car at any time while it was in the shop to be painted? A. Yes, sir. . . . Q. If he did not buy it he would have the right to go ahead and paint it? A. Yes. . . . Q. Then, Mr. Hazard, the truth of the situation is this, is it not: that you delivered the car to Mr. Baker expressly with the understanding that he should buy it? A. No, sir. Q. What was the understanding? A. Not expressly. The understanding was that he could buy it, and the price was open to anyone who wished to purchase. . . . Q. And you did not object to his taking the car out to see if he could raise money? A. Only on the day I gave him permission to use the car [June 12th]. . . . Question by the Court: Did you ever authorize the defendant to take that car out of this county? A. No, sir. Q. Or anywhere else except to go to Sisquoc on this errand to see if he could raise the money? A. That was all.'' On his redirect examination Hazard testified as follows: Q. Mr. Hazard, on June 12th, at the time this contract was executed [referring to the painting contract evidenced by the receipt which defendant gave when the car was left with him] was there any other agreement whatsoever of any kind or nature between you and E. W. Baker in regard to that car? A. Only he had the privilege to buy it if he could raise the money. . . . Q. But the car was left there under this contract [the contract to paint it]? A. Yes, sir. . . . Q. You mean that it was open ·for purchase by him or anybody else for that price, if they would come and give you the money? A. Yes, sir.''

At no time subsequent to June 12, 1922, when he left his car to be painted, did Hazard again see defendant until

after the latter's arrest. Shortly after the car was delivered to him to be painted defendant drove it to Mexico, where he left it with a man from whom he says he borrowed a sum of money. Some time about the middle of August Hazard recovered possession of the automobile. He testified that the "insurance people" told him that they had recovered the car. It was redelivered to him at Los Angeles by an agent of the insurance company.

[1] Needless to say, the evidence given by the People's witnesses was flatly contradicted, on many points, by that given by the defendant and his witnesses. For example, defendant testified that Hazard gave him express permission to drive the automobile to Mexico. By their verdict of guilty the jury resolved these contradictions in favor of the testimony of the People's witnesses, and this appeal must be disposed of upon the assumption that the facts are as testified to by them.

To support his claim that the evidence is insufficient to justify the verdict appellant claims: (1) That the automobile was delivered to him not only to be painted, but with the right to purchase it at any time while it was in his possession; and (2) that the owner gave him the right to use it.

The information was drawn under section 507 of the Penal Code. Hence, section 504a, added to the code in 1917, is inapplicable. Appellant's contention, therefore, necessarily presents the question of whether or not he held possession under a contract of bailment or under an unfulfilled contract of purchase. We think it clear that appellant was a bailee and that the transaction was one of bailment during all the time the automobile was in his possession. There never was a contract of sale, and appellant never acquired any interest in the car as a purchaser. According to the testimony of the complaining witness, which on this appeal must be accepted as true, appellant received possession of the car for a particular purpose, namely, to paint it, on an agreement to redeliver it after that purpose had been fulfilled. Such a transaction constituted a bailment. (6 C. J., p. 1088.) If the bailment had been coupled with an agreement whereby appellant had obligated himself to purchase on terms mutually agreed upon, the transaction doubtless would have constituted a sale. But appellant never

obligated himself to purchase. He never exercised the optional right which was given him—the right to purchase the car, at his option, for six hundred dollars by paying one-half of that amount in cash and agreeing to pay the balance in monthly installments. Under the terms of the offer made to him by the owner, appellant could exercise his optional right to purchase only upon the payment by him of one-half of the stated purchase price. That he never did. Until such time as he should make a cash payment of one-half of the amount for which the owner was willing to sell, or at least until such time as he should communicate to the owner his acceptance of the latter's offer and express a willingness to comply therewith by the immediate payment of one-half of the stated purchase price, appellant was a bailee and the transaction was one of bailment only.

One of the principal tests by which to determine whether any particular contract creates a mere bailment or is a sale on credit is this: Was there a binding promise on the part of the person to whom the possession was given to pay for the article? If there was such promise, then the contract is ordinarily held to be one of sale and not of bailment; and, conversely, if there was no such binding promise to purchase on terms agreed upon, then the transaction is ordinarily held not to be a sale. (See *Bentley* v. *Snyder,* 101 Iowa, 1 [69 N. W. 1023]; *Norwegian Plow Co.* v. *Clark,* 102 Iowa, 31 [70 N. W. 808].)

A bailment with an option on the part of the bailee to buy—and that is this case—is a bailment, and nothing more. (35 Cyc., p. 655.) There is a class of sales known to the law as "sale or return." They are cases where the purchaser is given the option to return the article if he does not like it. (6 C. J., pp. 1095, 1096.) Such cases differ radically from those wherein the person to whom the property is delivered is given the option to purchase if he likes the goods or if he finds himself financially able to make the purchase. In the former class of cases the title passes at once, subject to the right to rescind and return; in the latter class no title passes until the option to purchase is exercised. One who falls within the latter class, that is, one who, like the defendant here, is a bailee with an optional right to purchase, is guilty of embezzlement if he fraudulently appropriates the property with which he was en-

trusted. (*State* v. *Betz*, 207 Mo. 589 [106 S. W. 64].) See, also, *People* v. *Goodrich*, 142 Cal. 216 [75 Pac. 796].

[2] Our conclusion is that, having received the automobile under a contract to paint it and return it, with the optional right to buy it if he should desire to do so upon becoming financially able to make the initial payment, appellant held the car as a bailee only, and that he was guilty of embezzlement when, instead of painting the car or purchasing it by making the agreed payment, he fraudulently and feloniously converted it to his own use.

[3] There is no merit in the claim that appellant was given the right to take the car into the Republic of Mexico. According to the testimony of the complaining witness, the only right which appellant had to drive the car anywhere for his own use was the right to drive it to the town of Sisquoc, in Santa Barbara County, and then only on the one day mentioned by the parties, namely, June 12, 1922. This right to drive the car to Sicquoc was given to appellant solely for the purpose of enabling him, if possible, to raise the money wherewith he might make a payment on the car if he elected to purchase it. His action in taking the car out of the state in the manner he did, with all the attendant circumstances, was sufficient to warrant the jury in drawing the inference that he fraudulently appropriated it. That is, it was sufficient to warrant the inference that appellant converted the car to his own use in a manner and for a purpose inconsistent with the owner's rights and inconsistent with the nature and purposes of the bailment, and that he did so with a fraudulent and felonious intent. (See *People* v. *Fisher*, 16 Cal. App. 275 [116 Pac. 688].) There was, therefore, no necessity for a demand that the property be returned. (*People* v. *Fisher*, *supra*; *People* v. *Ward*, 134 Cal. 301 [66 Pac. 372]; *People* v. *Goodrich*, *supra*; *People* v. *Hatch*, 163 Cal. 368, 373 [125 Pac. 907].)

[4] The evidence was sufficient to warrant the jury in finding that the intent to embezzle the property was conceived in Santa Barbara County. This answers appellant's objection that the venue was not properly laid. (*People* v. *Goodrich*, *supra*.)

[5] Appellant's guilt is not affected by the fact that the evidence fails to show that the automobile was not recovered and returned to its owner prior to the time when

the complaint was lodged with the committing magistrate. Had appellant voluntarily restored or tendered restoration of the car before the complaint was laid before the committing magistrate that fact might have justified the trial court in mitigating the punishment, but it would not be a ground of defense. (Pen. Code, sec. 513; *People* v. *Royce,* 106 Cal. 188, 189 [37 Pac. 630, 39 Pac. 524].)

[6] While testifying in his own behalf at the preliminary examination in the justice's court appellant made certain admissions which the district attorney proved at the trial in the superior court by producing the person who took the shorthand notes of the testimony which appellant gave before the committing magistrate. That person was permitted to refresh her memory by referring to her notes. It is claimed that they should not have been used until it first was shown that the witness had been sworn honestly and faithfully to take the testimony in shorthand. The witness heard the statements which appellant made in the presence of the committing magistrate. She, therefore, regardless of whether she was or was not a duly appointed official reporter, was competent to testify to the admissions or statements which she had heard appellant make in her presence, and it was proper to permit her to refer to her notes for the purpose of refreshing her recollection. (Code Civ. Proc., sec. 2047. See *People* v. *Carty,* 77 Cal. 216 [19 Pac. 490].)

[7] The contention that the court erred in refusing to give certain instructions is not available here. The record before us fails to show that the requests for the instructions were proffered by appellant. (See *People* v. *Hettick,* 126 Cal. 425, 429 [58 Pac. 918], and *People* v. *Vukojevich,* 25 Cal. App. 459, 464 [143 Pac. 1058].)

[8] Newly discovered evidence was one of the grounds of appellant's motion for a new trial. The motion upon this ground was supported by the affidavits of the persons whose testimony appellant claimed he could adduce if granted a new trial. Those affidavits simply set forth the matters to which the affiants could testify. No attempt was made to show that their evidence could not have been produced at the trial by the exercise of reasonable diligence. The exercise of reasonable diligence is an express requirement of the statute. The code expressly states that a de-

fendant is entitled to a new trial upon this ground when new evidence is discovered "which he could not, *with reasonable diligence,* have discovered and produced at the trial." (Pen. Code, sec. 1181, subd. 7.) An affirmative showing that the newly discovered evidence could not have been discovered and produced at the trial by the exercise of reasonable diligence has always been insisted upon in the decisions. (1 Haynes on New Trial and Appeal, sec. 92.) "A motion for new trial upon the ground of newly discovered evidence," says the court in *People* v. *Warren,* 130 Cal. 685 [63 Pac. 86], "is looked upon with suspicion and disfavor, and a party who relies upon such ground must make a strong case both in respect to diligence on his part and as to the truth and materiality of the evidence, and if he fails in either respect his motion must be denied." We cannot perceive that the trial court abused its discretion in denying appellant's motion for a new trial.

The judgment and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.