THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDITH KAYE, Appellant.

Second Department, January 22, 1945.

*Michael Kern* for appellant.

*Thomas Cradock Hughes, Acting District Attorney (Henry J. Walsh* of counsel), for respondent.

JOHNSTON, J. Defendant appeals from a judgment convicting her of the crime of grand larceny in the first degree. It is necessary to state the essential facts.

The indictment contained seven counts, in each of which defendant was charged with the crime of grand larceny in the first degree. The first count alleged that on July 19, 1939, defendant obtained $900 from Yetta Marcus, hereinafter called complainant, upon the false and fraudulent representation that the Pinkerton Detective Agency would procure evidence against complainant's husband, which would be the basis of an action for divorce. The second count charged defendant, as bailee, with the theft of the $900. The third count charged the same act as a common-law larceny. The fourth count alleged that on September 19, 1939, the defendant, while having in her possession, as bailee, a ring of the value of $1,000, owned by the complainant, appropriated the same to her own use. The fifth count charged the same act as a common-law larceny. The sixth count alleged that on September 20, 1939, the defendant, while having in her possession, as bailee, a lavaliere of the value of $1,000, owned by the complainant, appropriated the same to her own use. The seventh count charged the same act as a common-law larceny.

On a former trial the court dismissed the second, third, fourth and sixth counts and the jury acquitted the defendant of the crime charged in the first count and convicted her of the crimes charged in the fifth and seventh counts. This court reversed

the judgment and ordered a new trial (265 App. Div. 1056).
Upon the second trial, although the proof in support of both
counts was substantially the same, the jury acquitted the
defendant of the crime charged in the fifth count and convicted
her of the crime charged in the seventh count.

It was not disputed that defendant received from the com-
plainant both the ring and the lavaliere. and when she received
them she delivered written receipts. The first receipt, after
describing the ring, states: '' This ring is to be returned to
Yetta Marcus in ninety days and is being taken by me as
collateral deposit on a divorce arrangement with her husband.''
The second receipt, after describing the lavaliere, states that
it is received according '' to the same arrangement of divorce
as the other ring.''

The People claimed that defendant obtained possession of
both the ring and the lavaliere by trick and device and with
intent on her part to appropriate both articles to her own use.
Defendant contended that she obtained possession of both the
ring and the lavaliere under an agreement; that complainant
had authorized her to pledge the jewelry and that she always
intended to restore it and that pursuant to the agreement both
articles were restored to complainant many months before any
complaint to a magistrate charging defendant with the com-
mission of a crime. The ring was returned to complainant in
January, 1940, and the lavaliere on January 31, 1941. When
both articles were returned they were in the same condition
as when defendant received them, and there was no evidence
that the value of either had changed in the interval. Defendant
was arrested on September 4, 1941, and it appears no complaint
ever was made to a magistrate charging defendant with com-
mission of any of the crimes alleged in the indictment.

Complainant testified that in April, 1939, she met defendant
at the place of business of the latter's sister, Mrs. Helfand,
whose husband is complainant's second cousin. Several days
later complainant again met defendant at the same place and
the latter told her she knew complainant's husband; that he
was going out with a girl named Blanche who worked at
defendant's store; that he maintained an apartment for Blanche
and was the father of her child. When complainant asked
what she could do about it, defendant suggested that she get
a divorce and defendant volunteered to engage a detective to
obtain the evidence. Shortly thereafter defendant informed
complainant that she had engaged the detective, and in August,
1939, told her the evidence had been secured. Defendant also

told complainant that she had met the latter's husband who was willing to pay complainant $15,000 to avoid a scandal and he had deposited $15,000 in Liberty bonds with defendant as evidence of his good faith to " go through " with the divorce, and he expected complainant would evince her good faith by furnishing some security. Defendant urged complainant to furnish such security, and thereafter, on September 19th, complainant delivered the ring and the following day the lavaliere. Complainant further testified she did not give defendant permission to pawn the jewelry and that she never received the $15,000 in Liberty bonds.

The People called complainant's husband, Samuel Marcus, who testified that in May, 1939, he went to Florida to secure a divorce, which he obtained in June, 1940. On direct examination he denied defendant had anything to do with his securing the divorce, or that he deposited the Liberty bonds with defendant, or that he ever had any conversation with defendant in reference to complainant's depositing security as evidence of her good faith. However, on cross-examination he admitted that during the summer of 1939 he had several conversations with defendant in which his marital difficulties were discussed and defendant tried to have him and complainant settle their differences. He also admitted that in August, 1939, he told defendant he was willing to make some arrangement with his wife either to live together or permanently separate " by means of this, Florida divorce." He further admitted that he told defendant, " My wife is irresponsible. I cannot rely upon her. * * * She will do one thing one day and another thing another day and therefore I want to have her put up something as collateral for her good faith."

Defendant did not testify in her own behalf, but her sister, Mrs. Helfand, testified that in August, 1939, complainant and Marcus, both of whom she had known for more than twenty years, and defendant and she were at her home, where defendant also resided. Mrs. Helfand also testified that at that time they discussed the divorce of complainant and Marcus, and, in the absence of complainant, Marcus said he was bitter against complainant; that she had stolen $100,000 from him and he did not trust her and " I want her to put up security and I will, too," and Marcus also stated he would put up $15,000 in bonds. Mrs. Helfand further testified that subsequently complainant told her she had permitted defendant to pawn the jewelry and use the proceeds of the loan to pay for a fur coat which complainant had purchased for her daughter. Defendant's sister-

in-law, Sadell Kaye, testified that complainant did purchase a fur coat for her daughter at a shop owned by defendant and her husband — where the witness was employed as a saleslady — and agreed to pay $600 for it; that later complainant's daughter accompanied by her brother called at the shop and received the coat, but complainant never paid for it. The witness also testified that defendant made a payment of $200 on account of the purchase price. Defendant's niece, Cynthia Helfand, testified that early in September, 1939, she accompanied defendant to complainant's home and overheard a conversation in which defendant asked complainant for some money to pay for the coat and when defendant said she needed it complainant replied, " Well, when I give you the jewelry you can pawn that and use that money."

Mae Goldfarb, complainant's daughter, called by defendant, admitted that in August or September, 1939, she received the fur coat as a wedding present from her mother and she accompanied defendant to the latter's shop where she selected it. During her examination it was disclosed the witness had made an affidavit in which she stated that the coat was to cost $600, which was to be paid by complainant to defendant. In that affidavit the witness also stated that she " knows of her own knowledge " that her mother turned over the lavaliere to defendant, who had her permission to pawn it and apply the proceeds of the loan, amounting to $300, toward the purchase price of the coat; and when she — complainant — was in funds she would redeem the lavaliere and also pay the balance due on the coat. The witness, while admitting she made the affidavit, insisted the latter statement was false. Her explanation was that she had been sued by defendant for the purchase price of the coat and defendant told her that if she made the affidavit she would be released from the lawsuit; that she executed the affidavit and subsequently the lawsuit was discontinued without the payment of any money. There was other evidence adduced, both by the People and defendant, but in the main it was cumulative.

While admittedly defendant pawned the jewelry, it must be borne in mind that in neither of the counts upon which she was tried was defendant charged, as bailee, with appropriating the jewelry to her own use. The sole charge was that defendant originally obtained the possession of each article feloniously, that is, that at the time she obtained it she had a deliberate and willful intent to deprive the true owner of it and of the use and benefit thereof. On that issue the evidence was con-

flicting, but sufficient to sustain the conviction; and the judgment should be affirmed except for what I regard as fatal errors by the court in its rulings upon matters of law.

Throughout the trial the court eliminated from the consideration of the jury any intention on the part of the defendant to restore the jewelry. It is unnecessary to detail all the rulings and comments of the court in this respect, but the following is typical: Defendant requested the following charge: " Mr. Kern: * * * I respectfully ask the Court to charge this jury as a matter of law that if the jury believes that the defendant at the time of the taking of this jewelry intended to restore the property taken, that that is a ground of defense, if the jewelry was actually restored before the commencement of a prosecution for the taking of the jewelry. The Court: I refuse to so charge. In that case the thief who picks your pocket and runs away and comes back the next day and says, ' Here is your watch back ', has a defense to a larceny charge. That is not the law, gentlemen. Mr. Kern: I respectfully except, your Honor, and I respectfully except to the Court's comment immediately following the refusal to charge. The Court: Yes, I want to make the thing very clear to the jury."

Section 1307 of the Penal Law provides: " The fact that the defendant intended to restore the property stolen or embezzled, is no ground of defense, or of mitigation of punishment, if it has not been restored before complaint to a magistrate, charging the commission of the crime." This section formerly was section 549 of the Penal Code adopted in 1881. Apparently it had no forerunner in the Revised Statutes.

There is some confusion in the cases as to just what the statute means and the decisions cannot be reconciled either in reasons or results. Speaking of the statute, this court has said it " presumes that the property had at some prior point of time been *stolen* * * *, that is, necessarily there must have been an intent — whether fast or fleeting — to deprive the owner of his property permanently. This section is rather a declaration than a departure in the criminal law." (*Parr* v. *Loder,* 97 App. Div. 218, 221.)

The First Department, also speaking of the statute, has stated that intent at the time of the taking to restore the property taken, followed by actual restoration prior to a complaint to a magistrate, is a complete defense to a charge of larceny. (*Ehrenreich* v. *Fox Film Corporation,* 198 App. Div. 10, 15.)

The Fourth Department, citing the statute, held that " The offense of embezzlement is in the initial act of misappropria-

tion, and the fact that the defendant intended to restore or return the property embezzled is no defense *where restoration has not been made."* (Emphasis supplied.) (*People* v. *Meadows,* 136 App. Div. 226, 236, affd. 199 N. Y. 1.)

The Court of General Sessions, in granting a motion to dismiss an indictment charging defendant with the crime of grand larceny in the first degree, held that although the statute (Penal Law, § 1307) could be urged only as a matter of defense upon the trial, nevertheless it was compelled to take cognizance of the fact disclosed by the Grand Jury minutes that one month before the indictment was returned the complainant had settled with the defendant upon the basis of a civil and not a criminal liability. (*People* v. *Hamilton,* 30 N. Y. S. 2d 155, 159, not officially published.)

In *DeLong* v. *Massachusetts F. & M. Ins. Co.* (142 Misc. 654) Mr. Justice HINKLEY held that a larcenist who had restored the stolen property, as provided in the statute, had become exempt from criminal prosecution because " a statutory prohibition against a defense signifies conversely that proof beyond the pale of that prohibition is a defense."

It will be noted that the statute refers to property which has been " stolen or embezzled " and provides that intention to restore, without restoration as therein provided, is no ground of defense. In my opinion there is no basis for concluding that the converse is true, namely, that an intention to restore " stolen or embezzled " property, followed by restoration " before complaint to a magistrate, charging the commission of the crime," is ground of defense. To hold that a concurrent intent to make restitution or restoration some time thereafter purges a deliberate and felonious taking, would render the statute defining larceny " practically useless to prevent the evils at which it was aimed." This court so held in *People* v. *Shears* (158 App. Div. 577, 581, affd. 209 N. Y. 610) and stated that one who, with a conscious and willful intent, appropriates property of another to his own use, or that of someone other than the true owner, is guilty of larceny, and where " such intent exists, its criminality is in no way lessened by the fact that with the conscious intent to violate this statute [Penal Law, § 1302, Conversion of trust property] there went at the same time an intent to make future restitution after such violation."

Therefore, if defendant at the time she originally obtained possession had intended to steal complainant's property, her criminal intent, plus actual appropriation, constituted the crime with which she was charged, and the fact that she also intended

at some future time to restore it would not be a defense. But intention to return the property alleged to have been stolen, particularly if it has been restored before complaint, always is relevant as evidence of lack of felonious intent.

The effect of the court's rulings and comments was to preclude the jury from considering the defendant's defense that when she received the property from complainant she did so not feloniously, that is, with a willful intent to deprive the true owner of it, but lawfully; that is, pursuant to an express agreement and with the intent to return it to complainant.

Assuming, as the minority holds, that the charge of the court and its rulings in the case at bar were in accord with the charge and rulings in *People* v. *Shears* (*supra*), this court, in affirming the judgment in the latter case did not, as stated in the memorandum of the minority, interpret the statute as if it contained two separate sections.

There is no basis for reading the statute as two sections, to wit: (1) The fact that the defendant intended to restore the property stolen or embezzled is no ground of defense. (2) The fact that the defendant intended to restore the property stolen or embezzled is no ground of mitigation of punishment, *" if it has not been restored before complaint to a magistrate, charging the commission of the crime."* The statute is in a single sentence and the words italicized depend for their " meaning upon the primary command with which the sentence opens." (*Tyrrell* v. *The Mayor,* 159 N. Y. 239, 243.)

It also is stated that the courts of California have so construed a similar statute (§ 512) of the Penal Code of California. But in so concluding the minority has overlooked the fact that in California there are two separate sections of the Penal Code dealing with the intent to restore and the actual restoration of embezzled property.

Section 512 reads as follows: " [*Intent to restore property:* * * *.*] The fact that the accused intended to restore the property embezzled, is no ground of defense or mitigation of punishment, if it has not been restored before an information has been laid before a magistrate, or an indictment found by a grand jury, charging the commission of the offense."

Section 513 reads as follows: " *Actual restoration* [*not a defense but*] *authorizes mitigation of punishment.* Whenever, prior to an information laid before a magistrate, or an indictment found by a grand jury, charging the commission of embezzlement, the person accused voluntarily and actually restores or tenders restoration of the property alleged to have

been embezzled, or any part thereof, such fact is not a ground of defense, but it authorizes the court to mitigate punishment, in its discretion.''

It will be noticed that both statutes, unlike our statute, refer not to '' stolen or embezzled '' property but only to '' embezzled '' property.

Three of the cases cited by the minority — *McLaughlin* v. *Standard Acc. Ins. Co.* (15 Cal. App. 2d 558); *People* v. *Kay* (34 Cal. App. 2d 691) and *People* v. *Baker* (64 Cal. App. 336) — refer, not to section 512 of the Penal Code of California, which is almost a literal copy of section 1307 of our Penal Law, but to section 513. The holdings in the other two cases cited by the minority, *People* v. *Harris* (100 Cal. App. 78) and *People* v. *Kirwin* (87 Cal. App. 783, 784), can best be summarized by quoting from the opinion in the latter case. There the court, speaking of section 512, said: '' It will be observed, however, that this section does not provide that restitution is a defense, but that it is not a defense except under certain circumstances. The enactment must be read in connection with section 513 of the same Code, which is to the effect that when all proper circumstances are present the fact of restitution ' is not a ground of defense, but it authorizes the court to mitigate punishment, in its discretion.' ''

Hence, the above cases, so far as pertinent, are authorities against and not for the proposition for which they are cited.

As the minority relies solely upon *People* v. *Shears* (*supra*), which I believe may be readily distinguished, the facts in that case should be briefly summarized. There the defendant, as one of the trustees for the benefit of the creditors and stockholders of the Hollis Park Company, received a check for $3,334.44 to the order of the trustees. He and the other trustees indorsed the check for deposit in an account to be opened by the trustees. Instead of so depositing it defendant deposited it to the credit of the Crescent Mortgage Company, a corporation of which he was the president. Subsequently defendant drew a check on the latter account for $334.44 to the '' order of ourselves '' and indorsed the check in the name of the corporation and deposited it in an account in the Mechanics Bank to the credit of the trustees. On making this deposit he received from the Mechanics Bank a passbook showing the deposit of '' 334.44 '' and he then changed this entry by inserting an additional figure '' 3 '' so that the entry appeared to read '' 3,334.44.'' When these facts were discovered defendant was threatened with criminal proceedings and his two brothers raised moneys

by which restitution was made as to the proceeds of the original check, with interest on the sum diverted. Such restitution was made before the institution of any criminal proceedings. At various stages of the trial, as well as by specific requests to charge, defendant attempted, without success, to have the court rule that when he diverted the check he had an intent of making subsequent restoration, reparation or restitution of the proceeds thereof.

The distinction between the *Shears* case and the case at bar is patent. There it was not disputed that defendant clandestinely appropriated the proceeds of the check to his own use or the use of his company. As this court said (p. 580), every act of the defendant in connection with the misapplication of the check " was conscious, deliberate and apparently with full knowledge that he was acting illegally." Here the defendant acted openly, delivering writings which recorded her original transactions with complainant. There the defendant had no present ability to make reparation or restitution and his intention, if such he had, was based upon simple " hope or expectation." As this court pointed out (p. 583), " the defendant by misappropriating and diverting this check consumed it entirely. He could not thereafter restore it as property because it would have been then but a valueless piece of paper." Here the defendant always was able to restore the jewelry, and that her intention to return it as agreed was not based on a mere hope or expectation is shown by the fact that she did return it in its original condition. There restitution was made after defendant was threatened with criminal proceedings. Here restoration was made long before criminal proceedings were instituted.

The judgment should be reversed on the law and a new trial ordered.

ALDRICH, J. (dissenting). I dissent from reversal of the judgment of conviction and vote to affirm upon the authority of *People* v. *Shears* (158 App. Div. 577, affd. 209 N. Y. 610). That case has settled the interpretation of section 1307 of the Penal Law, formerly Penal Code, section 549, contrary to the contention of defendant. An examination of the record on appeal in that case (p. 98) shows that the Trial Justice charged the jury that section 1307 should be read as two sections, to wit: (1) The fact that the defendant intended to restore the property stolen or embezzled is no ground of defense; and (2) the fact that the defendant intended to restore the property stolen or embezzled is no ground of mitigation of punishment, if it has not been

restored before complaint to a magistrate charging the commission of the crime. The charge of the court, and the rulings during the trial in the present case are in accord with the charge and rulings in *People* v. *Shears (supra)*. It may be added that a similar provision of the Penal Code of California (§ 512) on the subject of embezzlement has received a construction by the courts of California like that applied in the *Shears* case. (*People* v. *Kirwin*, 87 Cal. App. 783; *People* v. *Baker*, 64 Cal. App. 336; *People* v. *Kay*, 34 Cal. App. 2d 691; *People* v. *Harris*, 100 Cal. App. 78; *McLaughlin* v. *Standard Acc. Ins. Co.*, 15 Cal. App. 2d 558.)

CARSWELL, Acting P. J., and LEWIS, J., concur with JOHNSTON, J.; ALDRICH, J., dissents and votes to affirm in memorandum in which ADEL, J., concurs.

Judgment of the County Court of Kings County convicting defendant of the crime of grand larceny in the first degree reversed on the law and a new trial ordered.