EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JULIO E. CALDER, acusado y apelante.

*Número:* CR-67-34        *Resuelto:* 29 de mayo de 1968

*Gerardo Méndez Correa* y *José Rafael Gelpí,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Convicto del delito de incesto cometido en su hija de trece años, apunta Julio E. Calder que el tribunal de instancia incidió (1) al permitir desfilar prueba de cargo de hechos específicos sobre la conducta del apelante y su mala reputación, la cual cubría la comisión por éste de delitos análogos al imputado; (2) al hacer comentarios perjudiciales al apelante; (3) al negarse a disolver el jurado luego de enterarse de tales comentarios; y (4) al dar por válido un veredicto rendido por un cuerpo de jurado incapacitado legalmente para actuar.

El tribunal no incurrió en tales errores. A continuación relacionamos los fundamentos de esta determinación.

1.—La prueba en que se basa el primer apuntamiento no desfiló ante el jurado sino que, luego de ser éste excusado, el juez sentenciador la oyó y determinó que la parte de la misma que el fiscal interesaba no era admisible. El ministerio público entonces desistió de presentarla. No hay indicio alguno en el récord que dé base a siquiera sospechar de que tal prueba ofrecida y no presentada llegara a oídos del jurado.

2 y 3.—Estos apuntamientos se basan en un incidente ocurrido mientras declaraba el apelante sobre el tratamiento quiropráctico para el asma conocido como "Ganglion in par technique" que le aplicaba a la perjudicada. Testificó que consistía primero en agitamiento y masaje espinal, luego pequeña presión con el puño en el peroné por 15 ó 20 minutos; luego cubría el dedo mediano con guante o capa de goma y lo insertaba por el recto como tres pulgadas y presionaba tres minutos en el lado izquierdo, luego giraba el dedo al lado derecho y presionaba tres minutos más. El incidente en cuestión aparece así, en la transcripción del testimonio del apelante:

"DEFENSA:

P En qué consiste el tratamiento que usted ha sancionado? Explique en qué consiste esa técnica que usted llama el 'Ganglion in par technique.'

R Es un tratamiento quiropráctico que consiste de un tratamiento sobre el área de la nalga cerca del peroné, después se aplica la presión. Si quiere puedo hacer una demostración.

P Entiendo que usted dice que quiere escoger un sujeto para, más o menos, explicar.

R Yo entiendo que el Fiscal padece de asma, vamos a hacérsela al Fiscal.

HON. JUEZ:

Usted es un atrevido, irrespetuoso. Las damas y caballeros del jurado tienen la bondad de retirarse.

Receso del Tribunal."

Se solicitó entonces por la defensa la disolución del jurado por haberse lesionado los derechos del apelante en tal forma que no tendría derecho a un juicio justo e imparcial. El tribunal dictaminó que:

". . . Entendemos que el incidente no es de tal naturaleza grave que pueda lesionar los derechos del acusado y que dé margen a que mueva la discreción judicial para aplicar las disposiciones del apartado 'D' de la Sección 144 de las Reglas

de Procedimiento Criminal en el sentido de que se haya cometido una irregularidad en tal forma y manera que el jurado no pueda rendir un veredicto justo e imparcial y se declara sin lugar la cuestión de derecho planteada."

Al regresar el jurado a la Sala, el juez lo instruyó en la siguiente forma:

". . . Antes del receso (dirigiéndose a las damas y caballeros del jurado) debo darles algunas instrucciones. Las corrientes de rigor y unas especiales que les voy a dar. Y es, que no pueden y no deben tomar en consideración en forma alguna el pequeño incidente que ocurriera cuando la contestación del testigo que no era responsiva al hacer referencia hacia el Fiscal y que el Juez tuviera que llamarle la atención. No deben tomar en consideración ese incidente para la determinación final del caso que estamos ventilando. Deben regirse única y exclusivamente por la prueba que desfile."

■ En vista de lo expuesto, no creemos que el referido incidente privó al apelante de un juicio justo e imparcial. *People* v. *Vukojevich*, 143 Pac. 1058 (D.C.A. Cal. 1914). Como dijimos en *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471, 476, 483 (1961):

"Es además principio hace ya tiempo establecido que las cortes tienen poderes inherentes para excluir a expectadores y tomar las debidas precauciones durante un juicio para prevenir incidentes que puedan interferir con el decoro que ha de prevalecer en toda corte.

. . . . . . . .

. . . No creemos que a los jurados deban mantenérsele aislados de los hechos que precisamente van a juzgar. No podemos presumir que sean personas de sensibilidad extrema, que el menor contacto con cualquier incidente, en casos de asesinato o de cualquier otro delito que estén juzgando, le afecte su ánimo en tal forma que le impida rendir un veredicto imparcial."

■ 4.—El jurado no quedó incapacitado porque uno de sus miembros se abstuvo de votar. Al informarse el veredicto de culpabilidad por el delito de incesto, el juez senten-

ciador preguntó: "¿Hay por lo menos 9 de ustedes conforme con el mismo?" El Presidente del Jurado contestó que el veredicto fue "9 a tres, dos y uno abstenido." Anteriormente el jurado había regresado a Sala para que el juez lo instruyera sobre "si en la votación se podía votar abstenido." El magistrado explicó al jurado que debían determinar si el acusado es culpable o no lo es y que el voto abstenido se considera como "no culpable." Al apelante no se le privó de su derecho constitucional de ser juzgado por un jurado compuesto de doce vecinos. El jurado en este caso estaba así constituido y el veredicto fue rendido por la mayoría constitucional de no menos de nueve. La instrucción sobre el voto abstenido más bien favoreció al apelante. El miembro del jurado que así votó oyó toda la prueba y es de presumir que participó en las deliberaciones pues no aparece del récord que no lo hiciera. Sólo aparece que se abstuvo de votar.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Caguas, en 26 de abril de 1965, por virtud de la cual condenó al apelante a cumplir la pena de seis a diez años de presidio.*

El Juez Presidente Señor Negrón Fernández no intervino.