THE STATE v. JACOB L. BETZ, Appellant.

Division Two, December 10, 1907.

1. EMBEZZLEMENT: Bailee: Sale and Return. Defendant wrote a jewelry company "to send him by express on memorandum one or two nice diamonds," and the company replied: "The goods described below are sent at your risk for examination and selection but none are considered sold nor does the title pass until the regular bill of sale has been sent. Please make return within —— days of their receipt," and this followed with a description of four diamonds and their wholesale price. *Held*, that this was not a "sale and return," that is, a sale of the four diamonds with an option to defendant to return them if he should not like them, but an option to purchase them if he was satisfied, and hence the title did not pass to defendant, of all four or any one of the diamonds, and a sale without a selection and without payment was, under section 1914, Revised Statutes 1899, an embezzlement as a bailee.

2. ———: ———: ———: Necessary Element. The class of contracts known as "sale and return" exists where the privilege of purchase or return is not dependent on the character or quality of the property sold, but rests entirely on the option of the purchaser to retain or return. Hence where diamonds were sent to defendant for "examination and selection," he was under no obligation to take any until after he had examined and selected one or more of them, and thus whether he would become a purchaser was dependent upon their character and quality. And until he did select one or more of them and notified the company the title did not pass to him.

3. ———: ———: Narrowed by Contract. The legal responsibility of a bailee may be narrowed or enlarged by any special contract, express or implied.

4. ———: ———: ———: **At His Risk.** And, hence, the fact the diamonds were consigned to defendant at his risk is not conclusive evidence that the transaction was a sale and not a bailment.

5. ———: ———: **Bailment as to Some: Sale as to Others.** Where the defendant was, under the facts, a bailee of all four of the diamonds, he was not injured by an instruction which told the jury he was a vendee as to two of them, and if they found he was a bailee as to the other two, etc., they would find him guilty. The instruction was too favorable to defendant, but of that he cannot complain.

Appeal from Gentry Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*J. W. Peery* for appellant.

(1) "The term bailee, when used in statutes declaring what acts of embezzlement shall constitute a public offense, is not to be understood in its large, but in its limited sense, as including simply those bailees who are authorized to keep, to transfer, or to deliver, and who receive the goods first bona. fide and then fraudulently convert. Where it does not appear that any fiduciary duty is imposed on the defendant to restore the specific goods of which the alleged bailment is composed, a bailment under the statute is not constituted, though it is otherwise where a specific thing, whether money, securities or goods, is received in trust and then appropriated. Unlike embezzlement by servants, of goods not yet come into the master's possession, it is of the essence of this form of embezzlement that the offense should be limited to the particular article bailed; and if the agent have liberty to dispose of such article, then he is not a bailee under the statute." 1 Whart. Crim. Law (9 Ed.), sec. 1055; Dotson v. State, 51 Ark. 119; Reg. v. Hassall, 8 Cox Crim. Cas. 491; Webb v. State, 8 Tex. Crim. Rep. 310; Krause v. Com-

monwealth, 93 Pa. St. 418; 2 Bishop, New Crim. Law, sec. 857. (2) "The term bailment implies that the owner of the property has placed it in the hands of another who is, at some time, to re-deliver it to the owner in its integrity or in an altered form agreed upon; if, however, the person to whom the property is delivered, has the option to pay for it in money, or in some other property, or to restore it, such option is inconsistent with the character of bailment, and the transaction is, in law, a sale, regardless of what the parties to the transaction may have called it, or have thought it to be." O'Neal v. Stone, 79 Mo. App. 284; Potter v. Mill Co., 101 Mo. App. 581; Coleman v. Lipscomb, 18 Mo. App. 443; In re Galt, 120 Fed. 64; Singer Mfg. Co. v. Ellington, 103 Ill. App. 517; Lyon v. Lenon, 106 Ind. 567; Chickering v. Bastress, 130 Ill. 206; Bradley-Alderson & Co. v. McAfe, 149 Fed. 254. That the transaction between the jewelry company and the defendant constituted a conditional sale, and not a bailment, is also clearly shown by the following cases: Tufts v. Wynne, 45 Mo. App. 42; Peters v. Featherstun, 61 Mo. App. 466; Bicking v. Stevens, 69 Mo. App. 168; Barnes v. McCrea, 75 Ia. 267; Smith v. Aldrich, 180 Mass. 367; Forrest v. Nelson, 108 Pa. St. 481; Dearborn v. Raynor, 132 Pa. 231; Basser v. Buxton, 86 N. C. 335; Cont. & B. Co. v. Trust Co., 108 Fed. 1; Morgan Elec. Co. v. Brown, 193 Pa. St. 351; Harper v. Hogue, 10 Pa. Super. Ct. 624; Equitable Co. v. Eisentrager, 68 N. Y. 866; Plow Co. v. Clark, 102 Ia. 31; State v. Barton, 125 N. C. 702. (3) "The class of contracts known as contracts of 'sale or return' exist where the privilege of purchase or return is not dependent upon the character or quality of the property sold, but rests entirely upon the option of the purchaser to retain or return. . . . The recognized distinction between bailment and sale is that, where the identical article is to be returned in the same or in some altered form, the contract is one of

bailment, and the title of the property is not changed. On the other hand, where there is no obligation to return the specific article and the receiver is at liberty to return another thing of value, he becomes a debtor to make the return, and the title to the property is changed. In such case the transaction is a sale." 1 Beach, Mod. Law. Cont., sec. 746. "Title to goods sold 'on memorandum,' that is, 'sale or return,' passes to the vendee upon delivery, subject to a defeasance by exercising the option to return the goods. Until the right to return has been exercised the goods are at the vendee's risk, and if they are destroyed in his possession, he is liable for their agreed value." Amidon v. Powell, 14 Mo. App. 577. "The general proposition, that a delivery of an article at a fixed price, to be paid for or returned, constitutes a sale, is not questioned. Where the option is with the party receiving, to pay for or return the goods received, the uniform current of authorities is that such alternative agreement is a sale." Crocker v. Gullifer, 44 Me. 491; Hotchkiss v. Higgins, 52 Conn. 205. (4) The custom prevailing among jewelers, whereby jewelry is sent by wholesale to retailers under a "memorandum" contract, to remain the property of the wholesaler, and to be paid for only after sale by the retailer, or if not sold to be returned, constitutes a conditional sale and not a bailment. Eisenberg v. Nichols, 22 Wash. 70; People v. Gluck (N. Y.), 80 N. E. 1022; Krause v. Com., 93 Pa. St. 418.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

It is insisted that the memorandum offered in evidence, which memorandum accompanied the four diamonds, was not a paper which placed the title in defendant; but was rather a paper that retained the title in the prosecuting witness, C. B. Norton Jewelry Company. It should be remembered that defendant, in his

State v. Betz.

order, asked the prosecuting witness to send him "by express on memo. one or two nice diamonds, one to one and one-fourth carat." Therefore, when the prosecuting witness sent four diamonds to defendant, it will readily be seen that these diamonds were placed with defendant as a bailee. There was no sale of the goods, certainly not of all four of the diamonds, neither was there a conditional sale of all four of the diamonds. Which one of said diamonds did defendant buy, which ones did he intend to return to the Kansas City firm? It cannot be argued that an attaching creditor of defendant could have taken said diamonds in satisfaction of a debt, neither can it be argued in case of the death of defendant, his personal representative could have taken charge of and sold said diamonds. The diamonds were sent to defendant for his examination and selection, they were not considered sold, neither did the title pass until a regular bill of sale had been sent to him. During the interval between the time when he received the four diamonds, and the time that he made the selection and remitted for the ones that he intended to keep and return the ones that he did not want, the title was in the Kansas City firm, and defendant was a bailee of that firm. If he had failed to remit to said firm, that firm could have taken possession of the property, because no title had passed and because there had been no sale of said property. Sec. 1914, R. S. 1899; Schouler's Bailments and Carriers, secs. 2, 3. "It is a bailment where goods are sold by A to B, the agreement being that they are to remain the property of A until paid for, or to be returned to A if not paid for." Lawson on Bailments, sec. 8; Harrington v. King, 121 Mass. 269; Dunlap v. Gleason, 16 Mich. 158; Kohler v. Hayes, 41 Cal. 455; King v. Bates, 57 N. H. 446; Wheeler v. Heil, 115 Pa. St. 482; Benj. on Sales, p. 356.

207 Sup.—38

GANTT, J.—This is an appeal from a conviction of the defendant in the circuit court of Gentry county, for embezzlement as a bailee, under section 1914, Revised Statutes 1899. The indictment contained three counts, the first charging embezzlement under said section, being the one upon which defendant was convicted; and the second also attempting to charge embezzlement under both sections 1912 and 1914; and the third count charging grand larceny. The second count was, upon motion, quashed, and after the trial was entered into, a *nolle prosequi* was entered as to both the second and third counts, and the cause was submitted to the jury on the first count alone.

The evidence showed that defendant was a retail jewelry merchant in the city of Stanberry, in said county, and had been dealing with and buying jewelry and diamonds from the C. B. Norton Jewelry Company of Kansas City for six or seven years.

On January 4, 1905, defendant wrote to this company the following letter or order:

"J. L. BETZ,
*Jeweler and Optician,*
Stanberry, Mo.                    1-4-05.
"C. B. Norton Jewelry Co.,
Kansas City, Mo.
"Dear Sir:
"Please send me by exp. on Memo one or two nice diamonds, 1 to 1¼ Kt. and oblige,

"Yours very truly,
"J. L. BETZ."

In response to said order the company sent to defendant by express the four diamonds described in the indictment, together with the following bill:

"C. B. Norton, Pres. and Treas. H. N. Norton, Vice
Pres. W. M. Lewis, Sec.
"Established 1873.

"Bills not paid at maturity subject to sight draft particular attention paid to filling orders.

Goods sent by mail only by special request and at risk of party ordering.

"Consigned on memorandum by

"C. B. Norton Jewelry Company, Jobbers of Diamonds, Watches, Jewelry, Clocks, Silverware, Tools, Materials and Optical Goods.

"1013 and 1015 Grand Ave.     Bell and Home Tel., 2073 Main.

"Kansas City, Mo. 1-6-'05.

"J. L. Betz,

"The goods described below are sent at your risk for examination and selection, but none are considered sold, nor does the title pass until a regular bill of sale has been sent you.    Please make returns within—days of their receipt.

"1 Dia.    5252 1 1-4    1-64c.           135.00    170.86
1 Dia.    5819 1 1-16 1-64c.           138.00    148.78
1 Dia.    3550 1 1-8c.                     125.00    140.63
1 Dia.    3503 1 1-12 1-16c.           140.00    218.75"

Upon cross-examination the president of the company testified as follows:

"Q.    Mr. Norton, I believe you stated awhile ago that defendant's Exhibit No. 1 is the bill which you sent to defendant with the shipment of this lot of diamonds?    A.    Yes, sir.

"Q.    And how long had you been doing business with the defendant?    A.    Probably six or seven years.

"Q.    You commenced doing business with him and selling him goods when he was at Maitland, did you not?    A.    Yes, sir.

"Q.    And continued there and after he moved to Stanberry?    A.    Yes, sir.

"Q.    How many goods did you sell him during those years—approximately?    Few or many bills?    A. Why, we sold him a good many goods.

"Q. The prices named in this bill, to-wit, $170.86; 148.78; 140.63, and 218.75, were the wholesale prices of these diamonds? A. Yes, sir.

"Q. And you said in answer to the court's question, that the title to these diamonds were to remain in you until he made his selection? A. Until they were reported on.

"Q. Until he made his selection, is what you said, is it not? A. It reads in there just exactly what it is.

"Q. Then this printed matter here in this bill-head constitutes the only agreement or arrangement you had with Mr. Betz? A. Yes, sir.

"By the Court: You mean arrangement or agreement under which the goods were shipped to him? A. Under which the goods were shipped to him. The letter says 'memorandum' just exactly as the bill says.

"Q. Mr. Norton, you had many times, in the six or seven years intervening before the sending to Mr. Betz of this bill, sent him goods on like bills, had you not? A. Yes, sir.

"Q. And he would either return the goods to you or pay for them? A. Yes, sir. Yes, sir.

"Q. And that course of dealing has existed for six or seven years? A. Why, yes, sir.

"Q. And if you had received from Mr. Betz a draft for six hundred odd dollars—whatever it is—for these diamonds, he would have been within his rights, under your arrangement and dealing with him, would he not?

"By Mr. Showen, counsel for plaintiff: Wait a minute. If the court please, we object to that for the reason that, if Mr. Peery is going to stand on his bill of sale here, as he starts out, it certainly is not competent to show some other arrangement—if that is his defense.

"By the Court: Well, I don't know about that— go ahead.

"Q. That is true, isn't it, Mr. Norton? A. Yes, sir. We would have given a regular bill for it then.

"Q. You would have taken the money and they would have been his goods? A. Yes, sir, and sent him a regular bill for the goods.

"Q. They would have been his goods? A. They certainly would.

"Q. In other words, he had the option of returning the goods to you or paying for them? A. He had the option to return the goods or pay for them. He certainly did. Yes, sir."

The defendant admitted upon the trial that he appropriated the goods mentioned in Exhibit No. 1, and described in the indictment, to his own use. Shortly after receiving the diamonds, he sold his stock of jewelry in Stanberry and went to Lincoln, Nebraska. The diamonds in question were pawned by him in that city, together with other diamonds of the value of $1,500 or $1,800. The defendant was arrested in Lincoln, and State's witnesses, Norton and Solon, visited him in jail at that city and had a conversation with him. They asked defendant why he had done that way, and he replied: "I can't tell you why I done this. I don't understand why I did the way I did. You have always treated me all right, and I had no need to have used you in this way."

At the close of the State's case, the defendant asked a peremptory instruction directing the jury to acquit the defendant, which was refused, and exceptions duly saved. The defendant offered no evidence and made five requests to the court for instructions on certain propositions, the substance which was that under the law and the evidence the transaction between the C. B. Norton Jewelry Company and the defendant was a conditional sale or "sale or return" and not a bailment, and that defendant could not therefore be convicted as a bailee under section 1914. These re-

quests were refused by the court, and the defendant excepted. Thereupon the court instructed the jury, in substance, that under the letter or order and bill hereinbefore set out, the defendant became a bailee of the company, "as to all but two of said diamonds," and if he converted them, he was guilty under the first count of the indictment. The defendant excepted to each of the instructions given by the court, because the court had failed to instruct on all questions of law arising in the case, necessary for the information of the jury in making up their verdict.

Under the instructions the jury found the defendant guilty of embezzlement as a bailee under the first count of the indictment and assessed his punishment at two years' imprisonment in the penitentiary. In due time defendant filed his motion for a new trial, alleging numerous grounds therefor. This motion was continued until the next December, 1906, term of said court, when it was overruled. To which action of the court defendant duly excepted, and thereafter duly perfected his appeal to this court.

I. The learned counsel for the defendant rightfully, we think, urges that the main proposition for decision in this case is whether under the evidence in the case the defendant was a bailee of the four diamonds, which were sent to him by the Norton Jewelry Company on the 6th of January, 1905. If the transaction evidenced by the letter of the defendant to the Jewelry Company and their letter to him on the 6th of January, 1905, constituted a sale, then of course defendant was not a bailee and not subject to prosecution under section 1914, Revised Statutes 1899, as he would not answer the description of the person against which that section was levelled. The learned counsel insists that this transaction as shown by the correspondence between

the Jewelry Company and the defendant falls within
that class of sales known in the law as "sale or re-
turn," in which it is held that title to goods so sold
passes to the vendee upon delivery subject to a defeas-
ance by exercising the option to return the goods.  The
general proposition that a delivery of an article at a
fixed price to be paid for or returned constitutes a
sale, is not questioned.  When the option is with the
party receiving to pay for or return the goods re-
ceived, the uniform current of authorities is that such
an alternative agreement is a sale.  [Crocker v. Gulli-
fer, 44 Me. 491; Hotchkiss v. Higgins, 52 Conn. 205.]
In Sturm v. Boker, 150 U. S. 1. c. 328, the Supreme
Court of the United States said: "The class of con-
tracts known as contracts of 'sale or return' exists
where the privilege of purchase or return is not de-
pendent upon the character or quality of the property
sold, but rests entirely upon the option of the pur-
chaser to retain or return.  In this class of cases the
title passes to the purchaser subject to his option to
return the property within a time specified, or a rea-
sonable time, and if, before the expiration of such time,
or the exercise of the option given, the property is de-
stroyed, even by inevitable accident, the buyer is re-
sponsible for the price.  The true distinction is pointed
out by WELLS, J., in Hunt v. Wyman, 100 Mass. 198,
200, as follows:  'An option to purchase if he likes
is essentially different from an option to return a
purchase if he should not like.  In one case the title
will not pass until the option is determined; in the
other the property passes at once, subject to the right
to rescind and return.' "  Judge STORY, in his work
on Bailments (9 Ed.), section 2, after criticising the
definitions given by Sir William JONES, Chancellor
KENT and BLACKSTONE, of bailment, himself defines
bailment as "The delivery of a thing in trust for some
special object or purpose, and upon a contract, express

or implied, to conform to the object or purpose of the trust." It will be seen from this definition that bailment, in his opinion, need not always contemplate a redelivery of the goods to the bailor. In many cases when personal property is delivered by the owner to another it becomes of great importance to determine whether the title to the property had been transferred or not and the facts in each case construed in the light of the law must determine whether the transaction is a sale or a bailment. Applying the foregoing general statements of the law to the transaction between the Norton Jewelry Company and the defendant in this case, was this a case of "sale or return" or was it a bailment? The defendant in his letter of January 4, 1905, requested the Norton Jewelry Company "to send him by express on memorandum one or two nice diamonds, 1¼ Karat." In response to this letter, the Jewelry Company wrote him as follows: "J. L. Betz, The goods described below are sent at your risk for *examination and selection* but none are considered sold nor does the title pass until the regular bill of sale has been sent you.    Please make return within — days of their receipt.

| 1 Dia. | 5252 1 1-4 | 1-64c. | 135.00 | 170.86 |
| 1 Dia. | 5819 1 1-16 | 1-64c. | 138.00 | 148.78 |
| 1 Dia. | 3550 1 1-8. | | 125.00 | 140.63 |
| 1 Dia. | 3503 1 1-12 | 1-16c. | 140.00 | 218.75." |

Now, was this an option to purchase if he was satisfied with the diamonds, or was it a sale of these four diamonds with an option to return them if he should not like them? In our opinion, it was but an option to purchase if he liked them or any one of them or any number of them. He had not requested the company to send him more than two diamonds. Obviously there had been no agreement as to the price of either one of the diamonds and a delivery of a specific diamond to him with the privilege of returning the same

in a specified time if he should become dissatisfied therewith. Moreover, as said by the Supreme Court of the United States, the class of contracts known as contracts of "sale or return" exists where the privilege of purchase or return is not dependent upon the character or quality of the property sold, but rests entirely upon the option of the purchaser to retain or return. Now in this case, the diamonds were sent to the defendant for his *examination and selection* and thus whether the defendant would become the purchaser was dependent upon the character or quality of the property and he was under no obligation to take either until after he had examined and selected one or more of them.

As already seen in Hunt v. Wyman, 100 Mass. 198, the title to the diamonds under this agreement did not pass until the defendant exercised his option and selected one or more of them and advised the Norton Jewelry Company of his selection. In this connection, we are referred by the learned counsel to that class of cases in which it is said that if the person to whom the property is delivered has the option to pay for it in money or other property or restore it, such option is inconsistent with the character of bailment and the transaction is in law a sale regardless of what the parties to the transaction may have called it or have thought it to be, but if we are right in holding that these diamonds were delivered to the defendant under a special agreement for his examination and selection, then clearly, in our opinion, this was but an option to purchase at the prices designated in the letter of the Jewelry Company to the defendant, and it was entirely competent for the company to reserve, as it did, the title, and to notify the defendant that these goods were not sold until he had made his selection and notified the company and received his bill of sale for the same. There was nothing offensive to sound morals or to any

positive rule of law which prevented the Jewelry Company from imposing this condition upon their delivery of the diamonds to the defendant as between the defendant and the company, and we have no question before us in this case of the rights of an innocent purchaser for value and without notice. Judge Story in his work on Bailments (9 Ed.), sections 31, 32 and 33, announces the doctrine to be that the legal responsibility of a bailee may be narrowed by any special contract, either expressed or implied, and so it may in like manner be enlarged. The stipulation in the memorandum of the bailment expressly negatives any right in the defendant to dispose of such diamonds until he shall have made his selection and notified the company and received a bill of sale therefor. We think it is too clear for discussion that the correspondence between the Jewelry Company and the defendant did not amount to a sale of all four of the diamonds, nor of any particular one of them, as the minds of the two contracting parties never met upon any such proposition. The goods were simply delivered to him temporarily in order that he might, if he was satisfied therewith, make a selection therefrom, and as he never made any selection or choice and notified the Jewelry Company of his selection, in our opinion, the title did not pass to him and he was a bailee thereof within the meaning of section 1914, Revised Statutes 1899. Had the defendant ordered a definite number of diamonds of a certain value and fineness and promised to pay for them either upon delivery or at a future date, and in response thereto the Jewelry Company had sent him the exact number of diamonds that he ordered and of the exact value and had accepted his terms to pay for the same upon delivery at some future date, and included the option for return within a specified time, then the defendant could have invoked the doctrine of ''sale or return'' as announced in the numerous

decisions cited by learned counsel for the defendant. But in our opinion, the facts of this case do not bring it within that rule, and when the defendant after receiving the diamonds under the correspondence had between him and the Jewelry Company, made no selection of the said diamonds or either of them and gave the company no notice of such selection, but fraudulently disposed of the same and converted the same to his own use with the fraudulent intent to deprive the company without its consent of its property therein, then and there he was guilty of embezzlement within the meaning of section 1914.

Nor do we agree with the defendant that the fact that these goods were consigned to him at his risk was conclusive that the transaction was a sale and not bailment. As was said in Sturm v. Boker, 150 U. S. 1. c. 330, "The defendant's common law responsibility as bailee exempted him from liability for loss of the consigned goods arising from inevitable accident. A bailee may, however, enlarge his legal responsibility by contract, express or fairly implied, and render himself liable for the loss or destruction of the goods committed to his care—the bailment or compensation to be received therefor being a sufficient consideration for such an undertaking."

II.   But it is urged that the first instruction of the court was erroneous in telling the jury that the defendant under the circumstances recited in it "thereby becomes the bailee of such Jewelry Company as to all but two of the diamonds," and if the defendant "without the consent of the said Jewelry Company appropriated to his own use the two diamonds in excess of the number ordered by him each being then and there of the value of thirty dollars or more, then they would find him guilty." It is argued that as all of the diamonds were shipped at one time in one package and under one bill and with the regular wholesale price

of each stated and the defendant had the same right, privilege and option as to each of them, it is illogical to say that the transaction was a conditional sale as to a part of them and bailment as to the others. As already said, in our opinion, the defendant was a bailee of all four of the diamonds and not a vendee. But it does not follow that the defendant was in any manner injured by the circuit court conceding that he might be a vendee as to the two diamonds which he ordered and a bailee as to the two which he did not order. Under no interpretation of the correspondence could the defendant claim to be a vendee of more than two of the diamonds and as to the other two he was clearly a bailee without any right to dispose of the same until after he had selected them and notified the Jewelry Company that he had elected to take all four of the diamonds at the prices named and received a bill of sale therefor. The instruction, in our opinion, was too favorable to the defendant, but of that he cannot complain in this court. It simply narrowed his liability to two of the diamonds, when in our opinion, he was bailee as to all four of them. We find nothing in the oral testimony of Mr. Norton to the effect that the defendant had the option of returning the goods or paying for them at the prices specified in the order of the Jewelry Company to him, which changes our opinion as to the character of the transaction between them. Unquestionably he had the option after an examination of these diamonds to have elected to purchase all of them at the prices mentioned and notified the Jewelry Company of said option to purchase, and had he done so and had accompanied his notice of such selection with a remittance of the amount specified as the value thereof, he would have been fairly within his rights, but he did nothing of the kind. Without making any selection and without notifying the Jewelry Company that he had made his selection and without

paying anything for either one of the four diamonds and without receiving a bill of sale for either of them, he fraudulently disposed of all four of them and left the State.

In our opinion, there is no reversible error in the record and the testimony was ample to sustain the charge in the indictment, and the judgment of the circuit court must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.