THE STATE v. ELMER F. BAGLEY, Appellant.—96 S. W. (2d) 331.

Division Two, August 20, 1936.

*Robert L. Holder* and *O. H. Swearingen* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

TIPTON, P. J.—The appellant was indicted by the grand jury of Jackson County, Missouri, for the crime of embezzlement as a bailee. He was convicted and his punishment assessed at three years' imprisonment in the State penitentiary. From that judgment and sentence he has duly appealed to this court.

W. C. Elliott, was the owner of some Safety Savings & Loan

Association stock and had been trying to sell a part of these shares. The best offer he could get was approximately fifty per cent of its face value. He saw an advertisement in the Kansas City Star that the appellant would loan sixty per cent of its market value. Some time in January, 1934, Elliott went to the office of the appellant and was told by the appellant that he could obtain a loan of sixty per cent of the market value for the stock. No loan was made on that day. On February 1, 1934, Elliott went back to the office of the appellant and endorsed ten shares of this stock so he could obtain a loan. The appellant advised Elliott that he would have to come back in a day or two to get his money. On February 3, 1934, Elliott went back to the office of the appellant and received the $305.76 as a loan on his stock. Interest was due on this stock March 1, 1934, and it was agreed that Elliott would be entitled to the interest. On that date, Elliott did not receive the interest on this stock, and upon investigation was informed by the Savings & Loan Association that appellant had sold the certificate. He denied to Elliott that he had sold the certificate. He said if it was sold, it must have been sold by his eastern office; in that event some mistake had been made and "he would straighten the matter out."

The evidence disclosed that the appellant transferred the stock to Robert F. Allen on February 2, 1934. Some Safety Savings & Loan Association stock was being assembled by A. E. Howell to be used in purchasing some real estate belonging to the association. The sale was made by G. E. Tetters, and the purchase price paid for the stock was $538.

The appellant's defense was that he had a right to sell the stock at any time he thought the stock had depreciated in value. The appellant contended that Elliott signed a note for $312, dated February 1, 1934, and due February 1, 1935, secured by the certificate of stock in question. The collateral agreement of the note, among other things, gave to Elmer F. Bagley & Company the right to sell the stock if they felt unsafe or unsecure for any reason whatever, or feared diminution or depreciation in the value of the securities. Elliott denied that he signed the note. But he understood that the stock could be sold, but told the appellant not to sell it as he could put up additional securities. Other pertinent facts will be stated in the course of this opinion.

█ I. The appellant contends that the court erred in refusing to instruct the jury at the close of all the evidence to find the appellant not guilty. It is the contention of the appellant that the contract with Elliott was a contract of a pledge and not a contract of bailment. Therefore, the evidence fails to show an embezzlement of a bailment and the appellant is not guilty of the crime charged.

The appellant relied upon the case of State v. Peck, 299 Mo. 454, 253 S. W. 1019. In that case the prosecuting witness bought certain stock from the defendant. No cash was involved in the transaction. The defendant retained the stock sold to the prosecuting witness, who also deposited other stock to secure the defendant. The contract recited that it is understood and agreed that "all securities carried in this account or deposited to secure the same be carried in our general loans and be sold at public or private sale, without notice, when such a sale or purchase is deemed necessary by us for our protection." We held that the relation of pledgor and pledgee was created by the contract, and that being the relation, an indictment of embezzlement by the broker as bailee cannot be sustained. We also, held that if the transaction were a bailment, there was an express grant of power to defendant's company to sell the stock, and there could be no embezzlement of the stock by the bailee, or of the money for which it was sold, for under the contract the defendant had both the right to sell and to appropriate the proceeds to the account of his company.

We think that case is distinguishable from the case at bar. In the case at bar, the stock certificate was deposited with the appellant on February 1, 1934. It was sold on the next day. It was not until the following day the loan was completed. It is evident from the record that the appellant had to sell the certificate in order to get the money to make the loan to Elliott. The evidence is sufficient to show that the appellant sold the certificate before the loan was consummated. At the time it was sold, certainly the appellant was a mere bailee, he was lawfully in possession of the property, but until he transferred the money to Elliott he did not have any debt to be secured by a pledge and therefore could not acquire any interest or title in the certificate. He not only sold the property before the loan was consummated, but retained the proceeds over and above the amount turned over to Elliott.

In the case of State v. Betz, 207 Mo. 589, 106 S. W. 64, a wholesaler sent four diamonds to the defendant under the following conditions: "The goods described below are sent at your risk for examination and selection, but none are considered sold, nor does title pass until the regular bill of sale has been sent." We held that this was not a sale of the four diamonds with an option to defendant to return them if he should not like them, but an option to purchase them if he was satisfied, hence, the title did not pass to defendant, and as the defendant sold the diamonds without accounting to the wholesale dealer he was guilty of embezzlement as a bailee.

We think that the principle in that case is applicable to the case at bar. Here, the appellant had no interest to protect until he advanced the money to Elliott. This is so, even if we assume that Elliott signed the note that the appellant claims he did (though

Elliott denied doing so). If Elliott did not sign the note which contained the power of sale above quoted and the contract of the pledge was silent as to the right to sell the pledge then the pledge could not be sold until the debt was due. [49 C. J. 948, sec. 98.] We hold the evidence was sufficient to sustain the verdict.

II. The prosecuting attorney in his opening statement stated that the State would show other transactions similar in character to the one alleged in the indictment; that the court would instruct the jury that they were admissible only for the purpose of showing appellant's fraudulent intent. Upon objection the court said: "Just omit them from the opening statement." After the opening statements were made on both sides the appellant asked the court to withdraw all statements made by the prosecuting attorney with reference to other transactions, which the court did. The appellant requested no further action of the court, and saved no exceptions and is therefore in no position now to charge the trial court with error. [State v. Painter, 44 S. W. (2d) 79, 329 Mo. 314.]

The record before us is entirely different from the record in the case of State v. Dixon, 253 S. W. 746. The record under review shows that the trial court complied with every request in regard to the opening statement made by the appellant. This point is without merit.

III. The appellant contends that the trial court erred in giving Instruction No. 2. In substance, that instruction told the jury that if it found from the evidence that the appellant was the holder of a certain right in action and valuable security as collateral for a contemplated loan of $312, to be made by him to Mr. Elliott, to-wit: one share of the Safety Savings & Loan Association stock, of the value of $30 or more, in excess of the contemplated amount of said loan, and that the certificate was the personal property of W. C. Elliott; that it had been delivered to the appellant upon the condition that at any time thereafter the appellant should feel unsafe or unsecure for any reason whatever or fear diminution or depreciation in the value of said securities, that the said appellant might sell or transfer said securities and that in violation of the powers of sale and before the consummation of the loan the appellant without reasonable apprehension or fear of diminution or depreciation or other insecurity in the value of said securities, he did fraudulently and feloniously sell, transfer and convert the security to his own use without the consent of the said W. C. Elliott, then they should find the appellant guilty of embezzlement by a bailee.

The appellant complains of the instruction because it required the jury to find that the "defendant did become and was the bailee of,"

etc., when there was no evidence of that fact. We have already ruled there was sufficient evidence to find that relationship between the appellant and Elliott was that of bailor and bailee.

The appellant states that there was no evidence of the value of the securities as of the day they were taken by the Safety Savings & Loan Association. The embezzlement took place on February 2, 1934, and the price obtained for the stock was $538. It is immaterial what the value of the stock was the day the transfer was made on the books of the association, as the conversion of the stock took place prior to that time, to-wit: February 2, 1934.

The appellant also complains that the "instruction fails to charge the jury to find that the alleged conversion was done with the intent to deprive the owner (Elliott) of his interest in and to the securities, thus it fails to charge the jury to find all the elements of the offense." To this we do not agree. The instruction required the jury to find "the said Elmer F. Bagley, did then and there fraudulently and feloniously sell, transfer and convert the said right in action and valuable security, to-wit: one share of the Safety Savings & Loan Association stock, to his own use without the consent of the said W. C. Elliott. . . ." The above-quoted portion of the instruction answers appellants complaint of this instruction. It required the jury to find that the conversion was made without the consent of Elliott and that the appellant intended to deprive Elliott of his interest in the stock certificate.

Appellant next complains of the instruction because it refers to one share of stock. Throughout the evidence only one certificate of stock was referred to, and that called for ten shares. We do not believe the jury was misled by this instruction. The jury could have only understood what was meant was one certificate of stock.

Appellant contends that the instruction is erroneous because it failed to require that the acts were committed in Jackson County, Missouri. The appellant relies upon the case of State v. Igo, 108 Mo. 568, 18 S. W. 923. In that case we reversed the judgment of the trial court as we said: "The evidence of the crime and the venue of the crime was wholly circumstantial, and very meager at that." In this case there is no dispute as to the place where the crime was committed. In fact the defendant's evidence showed that the transaction in regard to the transfer of the stock on February 2, 1934, took place in Jackson County, Missouri. Under these circumstances it is not error, in failing to require the jury to find that the crime was committed in that county [16 C. J. 970, sec. 2365.]

In appellant's brief he complains of this instruction because the court does not define the word "bailee." It is a word in general use and the jury understood its meaning. The appellant did not ask that it be defined. Therefore, we cannot convict the trial

court of error in failing to define it. [State v. Raines, 62 S. W. (2d) 727, 333 Mo. 538; State v. Carter, 64 S. W. (2d) 687.]

We find no prejudicial error in this instruction as given by the court.

IV. Appellant assigns as error the giving of Instruction No. 3. In his motion for a new trial, the reason he assigns is: "Because the court erred in giving Instruction No. 3, over the objection and exception of the defendant." This assignment is too indefinite to present anything here for review. [Sec. 3735, R. S. 1929.]

V. The appellant asserts in his motion for a new trial, but not in his brief, that the trial court erred in permitting the prosecuting attorney to cross-examine appellant upon matters not referred to on direct examination.

It must be borne in mind that the prosecuting attorney was not limited to a categorical review of the questions asked by appellant's counsel, but was at liberty to cross-examine him with reference to any subject mentioned in his direct examination. [State v. Gilmore, 336 Mo. 784, 81 S. W. (2d) 431, and cases cited therein.]

With this rule of law in mind, we have examined the evidence disclosed by the record to which the appellant objected and find that he had testified on direct examination to every subject inquired into on his cross-examination except where the trial court sustained the objection.

VI. The appellant complains in his brief that the verdict of the jury is against the evidence. We have already ruled there is sufficient evidence to sustain the convictions. If the appellant, means that the verdict is against the weight of the evidence, of course that is a matter that should be addressed solely to the trial court.

VII. Lastly, the appellant complains that the court erred in failing to instruct as to the effect of his Exhibit No. 1, which was the note appellant claimed was executed by Elliott. It is well settled that it is not the duty of the court, in instructing on the law of the case, to instruct upon collateral matters or issues absent a request of the appellant to do so. [State v. Albritton, 40 S. W. (2d) 676, 328 Mo. 349; State v. Shuls, 44 S. W. (2d) 94, 329 Mo. 245.]

The record does not disclose any material error. The judgment is, therefore, affirmed. All concur.