Dianne L. (Brown) STEWART,
Plaintiff-Appellant,

v.

Jackie Lee BROWN, Defendant,

L & E Martin Oil Company,
Intervenor-Respondent.

No. 10137.

Missouri Court of Appeals,
Springfield District.

Jan. 18, 1977.

Julian J. Ossman, Myers, Webster & Perry, P.C., Webb City, for plaintiff-appellant.

Dwight Douglas, Douglas, Douglas & Douglas, Neosho, for intervenor-respondent.

TITUS, Judge.

Plaintiff and defendant (wife and husband respectively) were divorced and the divorce judgment awarded plaintiff child maintenance. Asserting that defendant was in arrears in maintenance payments, plaintiff, in aid of execution on the judgment, had a Joplin bank summoned as garnishee. L & E Martin Oil Company (Martin) filed an "Interplea" (Rule 90.08, V.A. M.R.) laying claim to "a substantial part of the money deposited in the" bank, to-wit: deposits totaling $7,845.90 made by defendant from July 3 through July 14, 1975. Martin alleged "[t]hat since the money in the said account is proceeds from the sale of property belonging to [Martin] that the said funds are held in trust by [defendant] and that under the Missouri law, [Martin] has a right to immediate possession of the funds in said account." On the day garnishee answered plaintiff's interrogatories, it acknowledged that defendant had a checking account with the bank in the name of "Jack's Skelly" which had a balance of $5,445.20. When the bank paid the money into court it was ordered "discharged from the garnishment herein." Although the court, following a bench trial, observed the account contained "some" of defendant's money, it concluded, nevertheless, "the money belongs to Martin." Judgment was entered accordingly and plaintiff appealed.

At the times of concern, defendant, under the name of "Jack's Skelly" or "Jack's Skelly Service," was operating a service station in Joplin which he leased from owner Martin who was a franchise jobber for Skelly Oil Company. Under a "Special 'Keep-Fill' Motor Fuel Sales Agreement" executed by Martin and defendant, Martin contracted to deliver and store at defendant's place of business Skelly motor fuel and to place the same in tanks at the station. Defendant agreed the title to the fuel "shall be and remain in" Martin until removed from the tanks "through and by means of computing pumps." Thereupon, Martin agreed to sell to defendant and defendant agreed to purchase from Martin "all such motor fuel as may be removed from said tanks as aforesaid." Defendant contracted to pay Martin "on demand in cash" for all fuel removed from the tanks. The contract provided that if defendant failed to comply with payment requirements, Martin could suspend deliveries, terminate the service station lease, end the "Keep-Fill" agreement, lock the pumps, remove all fuel from the tanks and repossess the premises.

In addition to the motor fuel Martin placed in the tanks, defendant sold tires and other automotive parts and accessories, soft drinks, and the usual items of merchandise one generally finds for sale at service stations. Because defendant said he paid some of his obligations by cash or money order, it is reasonable to assume that he did not deposit one hundred percent of his income in the checking account in question, which was the only account he maintained. On the other hand, it may also be assumed that most of the deposits made to the account represented gross cash proceeds realized from operation of the service station. About 20 to 30 percent of the sales made at the station were made on credit cards of Skelly Oil Company. In practice, Martin would read the computing pumps at the station every three or four days to determine the number of gallons of fuel that had

been removed from the tanks. From these readings Martin would compute defendant's cost of the fuel sold and bill him for what he owed for the fuel and for whatever else he might owe Martin for other supplies purchased from Martin or acquired on Martin's credit from other suppliers. Payments by defendant to Martin were made by credit card receipts and by checks drawn on defendant's bank account. Defendant also wrote checks on the account to pay his employees, creditors other than Martin, and to make some child support payments.

The parties tried and have briefed the cause on the theory that § 400.2–326, V.A.M.S., was involved.[1] Under the "Special 'Keep-Fill' Motor Fuel Sales Agreement" the parties specified that title to the fuel remained in Martin so long as it remained in the storage tanks. Consequently, paragraph (b) of subsection (1) of the statute would not seem operative to make the transaction one of "sale or return" as it related to stored fuel because there was no resale involved, for Martin had not sold the stored goods to defendant. Contrary to suggestions otherwise, defendant, doing business as "Jack's Skelly" or "Jack's Skelly Service" was not doing business under the name of Martin. Neither was he doing business under the name of Skelly Oil Company, any more than any other service station operator who sells branded gasolines on his own account at a station identified as one at which a particular brand of gasoline is sold. *Mann v. Clark Oil & Refining Corporation,* 302 F.Supp. 1376, 1380 (E.D. Mo. 1969), aff'd, 425 F.2d 736 (8th Cir. 1970); 1 Anderson, Uniform Commercial Code, 2d

Ed, § 2–326:19, at p. 785. Subsection (3) undertakes to deal with goods delivered to a person for sale (as opposed to resale) where the receiver does business under a name other than that of the supplier, even though the agreement purports to reserve title in the supplier "until payment or resale[?]." As Martin apparently had not complied with either paragraphs (a) or (c) of subsection (3) so as to make the subsection inapplicable, much of its evidence was devoted to an attempt to prove that defendant was generally known by his creditors to be substantially engaged in selling goods of others [par. (b) of subsec. (3)]. However, we need not go into the details of that evidence because we opine § 400.2–326 has no place in our consideration of the matter.

Why do we say the section has no application here? The subject of the garnishment was funds of a judgment debtor (defendant) on deposit in a bank which were subject to the debtor's check payable in money. *Baden Bank of St. Louis v. Trapp,* 180 S.W.2d 755, 759 (Mo.App. 1944); 9 C.J.S. Banks and Banking § 267 a., at p. 544. The statute applies to the possession of goods by a buyer or consignee for resale or sale which are deemed to be possessed via a sale or return transaction subject to the claims of creditors except as provided by the act. Plaintiff did not undertake to attach goods possessed by defendant and Martin does not claim entitlement to goods, only money. " 'Goods' means all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid" [§ 400.2–105(1), V.A.M.S.], whereas " 'Money' means

1. Sec. 400.2–326: "(1) . . . if delivered goods may be returned by the buyer . . . the transaction is . . . (b) a 'sale or return' if the goods are delivered primarily for resale. (2) Except as provided in subsection (3) . . . goods held on sale or return are subject to [the claims of the buyer's creditors] while in the buyer's possession. (3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on

sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum'. However, this subsection is not applicable if the person making delivery (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or (c) complies with the filing provisions of the article on secured transactions (article 9)."

a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency." § 400.1–201(24), V.A.M.S. By the terms of the Keep-Fill contract, Martin agreed to sell and defendant agreed to buy the stored motor fuel when it was removed from the tanks "through and by means of computing pumps." When this occurred, title in the motor fuel vested in defendant in the sale part of the transaction as if there had been an outright sale with no return feature. § 400.2–401, V.A.M.S.; 67 Am.Jur.2d, Sales, § 280, p. 421. Moreover, when title to the motor fuel vested in defendant as it was being dispensed to his customers via the computing pumps, the fuel was changed from goods and simultaneously converted into cash, checks or credit card receipts.

The parties may specify the times and terms of payment under the Uniform Commercial Code. § 400.2–310, V.A.M.S.; 67 Am.Jur.2d, Sales, § 403, at p. 561. By their written agreement, supra, defendant was to buy the fuel from Martin upon its removal from the tanks through the computing pumps and pay for the fuel thus purchased "on demand in cash." Since defendant contemporaneously resold the fuel to serve station customers at the same time he was purchasing it from Martin, and as the demand for payment was not contemplated until Martin had performed the twice-weekly reading of the computer pumps and therefrom computed defendant's cost of the fuel, it is evident that the sale from Martin to defendant was not to be a cash sale in strict legal signification and that defendant was to have a short credit following the sale until proper demand could be made. 77 C.J.S. Sales § 234 a., pp. 1004–1005. Therefore with nothing more, the sale of the fuel from Martin to defendant as it passed through the computing pumps changed whatever their previous relationship may have been to that of creditor and debtor. Although, as noted, Martin pleaded that the account which was garnished was being held in trust for it by defendant because it represented, in part, proceeds from the sale of its property, this ignored the fact that the part of the account it claimed represented receipts from sales of fuel the title to which was in defendant. Pleadings do not prove themselves [*Fulton v. Fulton,* 528 S.W.2d 146, 157 (Mo.App. 1975)] and since there was a total dearth of evidence anent the establishment or existence of any trust, and as the matter of an alleged trust has not been included in this appeal, the allegation regarding any trust is unavailing to Martin. *Gonseth v. K & K Oil Company,* 439 S.W.2d 18, 21[4] (Mo.App. 1969).

Rule 84.14, V.A.M.R., states that upon appeal in proper circumstances an appellate court should dispose finally of the case and render such judgment as the court ought to give. Nonetheless, as the parties were unwarrantedly mesmerized by § 400.-2–326, V.A.M.S., which we have found to be inapplicable to the facts in this case, plaintiff, as a lien creditor, neglected to prove up the quantum of her right to the account which has been garnished. We have, therefore, no alternative but to reverse the judgment nisi and to remand the cause for the reception of additional evidence and for the holding of further proceedings not inconsistent with the findings and rulings herein.

It is so ordered.

All concur.