In re EASTON TIRE COMPANY OF KIRKWOOD, Debtor.

BURNS BROS., INC., d/b/a Security Chain Company, Movant,

v.

EASTON TIRE COMPANY OF KIRKWOOD, Debtor-in-Possession,

Landmark Bank of St. Charles County, N.A., Intervenor.

Bankruptcy No. 83–01254(3).

United States Bankruptcy Court, E.D. Missouri, E.D.

Nov. 23, 1983.

Peter D. Kerth, St. Louis, Mo., for debtor.

Harry O. Moline, Clayton, Mo., for movant.

Lloyd A. Palans, Clayton, Mo., for Landmark Bank of St. Charles County, N.A.

Barry S. Schermer, Clayton, Mo., for creditors' committee.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

Plaintiff's motion here requests relief from the automatic stay and an order directing the debtor-in-possession to surrender certain chain products which are stored at one of the debtor's facilities. The trial was begun and concluded on November 9, 1983, and the Court announced its findings and conclusions from the bench. A brief review of the testimony and evidence is herewith set out.

Plaintiff is an Oregon corporation doing business as Security Chain Company, which is engaged in the manufacturing, distribution, and sale of winter traction products. The debtor-in-possession operates several retail outlets in the Saint Louis area, which sell automotive tires and tire products. It also maintains one location which is used as a warehouse and office for its wholesale operations.

Plaintiff's claim for relief is based upon a letter agreement with the debtor, which was dated July 7, 1982, and an addendum thereto dated July 16, 1982. In summary, plaintiff alleges that the agreement established a procedure whereby the debtor would act as a public warehouse for storage of plaintiff's chain products. The debtor was to receive a fee based upon the amount invoiced to it by Security Chain Company and the amount shipped by it from the warehouse to Security Chain Company's customers. In addition, the debtor was to have full and complete access to Security Chain Company's inventory at the warehouse for its normal chain sales. The plaintiff's witnesses testified that this provision would have allowed the debtor to sell or dispose of the entire chain inventory at any

one time subject to credit limits or on a cash basis. Plaintiff alleges here that it retained title to the chain product stored at debtor's warehouse, and is therefore legally entitled to recover those items which were not sold at bankruptcy.

The debtor, the Creditors' Committee, and the Landmark Bank of St. Charles County presented arguments and testimony in opposition to plaintiff's request. The Bank claims that it holds a first priority secured interest in the stored Security chain product, based upon pre-bankruptcy inventory financing agreements and a post-petition adequate protection order. The debtor and the Creditors' Committee argue that the chain product is not subject to any security interest running to Security Chain, and therefore is available for use or sale by the debtor for the benefit of all creditors in the Chapter 11 proceeding.

The question here turns upon an interpretation of the letter agreement between the parties. Security Chain Company has not claimed that it holds a security interest in the stored chain product; and, indeed, the facts indicate that no security agreements were filed by the creditor and no grant of a security interest was signed by the debtor. Similarly, the debtor stated that it issued no warehouse receipts or other evidence of retention of title by the plaintiff when the goods were received at the debtor's location. Both parties agreed that the debtor enjoyed the option of purchasing any or all of the Security Chain product stored in its facility at any time.

Other testimony and evidence in this matter resulted in the following additional findings: That after delivery to the debtor, Security Chain Company looked only to the product for protection of its interests; that Security Chain Company did not place any distinguishing sign or other special identification on its product after delivery to the debtor; that the debtor did not segregate the Security Chain Company product from the other chain products stored at its facility; that no franchise agreement existed between these parties; that the debtor is not completely identified in the market-place as a consignee of chain products; and that the debtor is not generally known to be in the business of selling products for or on behalf of other entities.

Therefore, the Court has entered the following conclusions: that although Security Chain Company's customers had reason to know that they were not dealing with the debtor as a seller, all other entities including debtor's creditors cannot be charged with such knowledge; that as is evidenced by the reply of the Landmark Bank in this proceeding, some creditors may have reasonably concluded that the Security Chain Company product stored at the debtor's facility was part of the debtor's inventory; that the letter agreement here is unclear as to the actual relationship between these parties; that although the intention of the parties is to be given considerable weight in interpretating an agreement in a bankruptcy case, the interests of the debtor's creditors must also be considered; that an ambiguity in an agreement which affects the bankruptcy estate must be resolved in favor of the best interests of all creditors; that as between these parties, the nature of the transactions in the letter agreement here closely resembles a "sale or return" agreement as described at Section 400.2–326, R.S. Mo.1979; that the debtor has dealt in goods of the same kind as those delivered by the Security Chain Company; that the debtor conducted its business under a name other than the name "Security Chain Company" or "Burns Bros., Inc."; that third parties dealing with the debtor may have reasonably believed that they were dealing with the seller of Security Chain products; that an inspection of the debtor's facility would not distinguish the chain product held for resale to Security's customers from the chain product to be sold to Easton's customers, or from the chain product held for other disposition at debtor's option, or reveal that such a distinction, in fact, existed; that upon consideration of the claims of the Creditors' Committee and the Landmark Bank of St. Charles County, the title to the Security Chain Company product passed to the debtor upon delivery to it, subject to rescission of the agreement and return of

the product, and subject further to the claims of debtor's creditors; and that pursuant to 11 U.S.C. §§ 363, 544, and 1107, the debtor-in-possession may use, sell or lease the Security Chain Company product in the ordinary course of its business for the benefit of its creditors. The authorities relied upon in these findings and conclusions include: 1. *Weidinger Chevrolet, Inc. v. Universal CIT,* 501 F.2d 459 (8th Cir. 1974), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974); 2. *State v. Betz,* 207 Mo. 589, 106 S.W. 64 (1907); and 3. *Stewart v. Brown,* 546 S.W.2d 204 (Mo.App. 1977).

Therefore, this plaintiff having no claim to the chain product which is greater than that interest enjoyed by the general creditors, the request for relief from the automatic stay is denied.